IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 4:16CR16 |
| | ) | |
| EDWARD JOSEPH MATISH, III | ) | |

**DEFENDANT'S SECOND MOTION TO SUPPRESS**

Edward Matish, III, through counsel and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), respectfully moves this Court for an order suppressing involuntary statements made by Mr. Matish during an FBI interrogation on August 14, 2015. An evidentiary hearing is requested.

## **INTRODUCTION**

Mr. Matish attended a meeting with the FBI, having agreed to sit for a polygraph examination. Quickly, that meeting became an interrogation. Mr. Matish initially resisted. He expressed a desire to leave. But the FBI agents pressed. They knew Mr. Matish was young and had virtually no prior experience with law enforcement. They knew he had been the victim of sexual abuse and had recently suffered severe mental health problems. They knew he lived with his mother, step-father, and sister.

When Mr. Matish suggested leaving without making a statement, the FBI agents threatened to prosecute him for impeding a federal investigation. Then they threatened to involve Mr. Matish's family, even though there was no reason to believe his family had engaged in wrongdoing. At that point, Mr. Matish's will was overborne and he signed various written statements confessing to facts consistent with the Government's theory of the case. Here, the

1

defense seeks suppression of those involuntary statements pursuant to the Fifth Amendment of the United States Constitution.

**STATEMENT OF FACTS**

On August 14, 2015, Edward Matish traveled to the FBI office in Newport News, Virginia to sit for a polygraph examination. Before Mr. Matish arrived that day, the FBI agents present knew that Mr. Matish had no criminal record—not even a prior arrest. They knew that he was 23 years old and lived at home with his parents and sister. During the pre-test interview, Mr. Matish told the agents that he had been suffering from depression and mental illness and that—because of this—his memory was "fuzzy." Mr. Matish also told agents that he himself had been a victim of sexual abuse as a child.

After arriving, Mr. Matish signed an acknowledgment of rights form and a form consenting to sit for the polygraph. A polygraph was conducted and Mr. Matish denied ever having had any sexual contact with a child or ever having physically touched a child for sexual pleasure. The polygraph had concluded, and now the FBI agents wanted a confession.

At various points during the subsequent interrogation, Mr. Matish expressed a desire to leave. He did this at least two times. In response, the agents told Mr. Matish that he should not leave without making a statement because they knew that he was guilty. They also threatened, on two occasions, to charge him with obstruction of justice or impeding a federal investigation if he did not make an inculpatory statement. The agents then threatened that, if Mr. Matish did not make a statement, his family would suffer because they would be seen as having harbored someone who was impeding a federal investigation.

The interrogation lasted hours and Mr. Matish was outnumbered by the agents. Although the interview was conducted at the FBI's office—in what appeared to be an interrogation room—the agents told Mr. Matish that the interview was not being recorded by video or audio. (That has been confirmed through discovery.) The door to the room was kept locked.

The agents fed Mr. Matish the information they wanted him to repeat and "adopt" as his own statement. Eventually, faced with threats of (unwarranted) further prosecution of himself and threats to his family, Mr. Matish executed multiple written statements. But he did not make these statements of his own free will.

## **LAW & ARGUMENT**

The Fifth Amendment of the United States Constitution guarantees that"[n]o person ... shall be compelled in any criminal case to be a witness against himself ... without due process of law." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). A statement is considered involuntary under the Due Process Clause when the defendant's "will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002). The test considers "whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Braxton*, 112 F.3d at 780.

When considering involuntariness, the courts look at the totality of the circumstances, "including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Cristobal*, 293 F.3d 140. The government must prove, by a preponderance of the evidence, that the statement given was voluntary. *Braxton*, 112 F.3d at 781. If the government fails to meet this burden and the statement is found to be involuntary under the Due Process Clause, the statement is inadmissible in evidence. *Id*.

### 1. FBI agents elicited involuntary statements by threatening to prosecute Mr. Matish for impeding or obstructing a federal investigation if he exercised his Constitutional right to remain silent.

"A statement obtained by the government by inducing fear through official threats of prosecution is not voluntarily given." *Choy v. Barber*, 279 F.2d 642, 647 (9th Cir. 1960); *see also United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003) (holding that "threats of prosecution can be objectively coercive"). In *Choy*, the interrogating officer told Mr. Choy that "if he did not offer a statement in conformity with [the] accusations against him, he would be prosecuted for perjury." *Id.* The Ninth Circuit held that—given the evidence that the agent had threatened additional prosecution for remaining silence—there was "no room for doubt that the improper conduct of the [ ] agents induced the admissions made by Choy." *Id.* The inculpatory statements were excluded. *Id.*

"Under our adversary system of criminal justice, a defendant may not be made to suffer for his silence." *United States v. Tingle*, 658 F.2d 1332, 1336 n.5 (9th Cir. 1981). For that reason, some courts have warned law enforcement that "there is no legitimate purpose" for even telling a suspect that his "failure to cooperate will be reported" to the prosecutor. *Id.* The Ninth Circuit has warned that, in doing so, the "only apparent objective is to coerce, [so] we disapprove the making of such representations." *Id.* Here, the FBI agents went a step further indeed. They threatened to prosecute Mr. Matish for remaining silent. For that reason alone, Mr. Matish's statements should be excluded as involuntary.

### 2. FBI agents threatened Mr. Matish's family members if he declined to make an inculpatory statement.

"The tactic of inducing a suspect to talk by threatening adverse consequences to a friend or loved one is a particularly pernicious technique." *United States v. Rodgers*, 186 F. Supp. 2d

4

971, 976 (E.D. Wis. 2002). For constitutional purposes, threats to cause negative consequences for a suspect's family can render a confession involuntary. *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993).

For example in *Lynumn v. Illinois*, Lynumn orally confessed to a crime only after the police officers had threatened to take away the state financial aid she received for her infant child and that her children would be taken away from her. 372 U.S. 528, 534 (1963). She had been interrogated by three officers, was alone, and had "no friend or adviser to whom she might turn." *Id.* She also had a lack of previous experience with law enforcement and therefore reasonably believed "that the police had ample power to carry out their threats." *Id.* Considering all of these factors, the Court held that Lynumn's statements were involuntary and inadmissible.

The case at hand is similar to *Lynumn* because—during the interrogation—the FBI agents suggested at least once that Mr. Matish's family would face criminal charges if he refused to "admit" what happened. As in *Lynumn*, Mr. Matish had no previous experience with law enforcement that would cause him to think that these threats were anything but reasonable. Mr. Matish was steadfast in his inability to remember anything regarding his alleged account on Playpen until the agents threatened his family and showed him exactly what it is that he was supposed to remember. It is clear from the record that he was unable to remember any details that were not specifically shown to him by the agents during the interrogation. Mr. Matish acted similarly to Lynumn when he simply said what he was essentially told to say in order to prevent his family from suffering.

In this case, there was never probable cause to charge any of Mr. Matish's family members with aiding and abetting obstruction of justice. *See United States v. Howard*, 549 F. App'x 164, 167 (4th Cir. 2013). Courts around the country have held that, in such

circumstances, a threat to charge a suspect's family member can render a resulting statement involuntary. *See, e.g.*, *United States v. Bolin,* 514 F.2d 554, 560-61 (7th Cir. 1975) (defendant's consent to search was not voluntary where police threatened to arrest his girlfriend despite having no basis for suspecting her of wrongdoing); *United States v. Ortiz*, 943 F. Supp. 2d 447, 458 (S.D.N.Y. 2013) (when there was no probable cause to arrest defendant's family members, officer's "threat to do so was sufficiently overreaching as to warrant suppression of Defendant's self-incriminating statements"); *United States v. Andrews,* 847 F.Supp.2d 236, 249 (D. Mass. 2012) (unfounded threat to arrest a suspect's mother rendered confession involuntary); *see also United States v. Vargas-Saenz*, 833 F. Supp. 2d 1262, 1265 (D. Or. 2011) (finding that, when officers "threatened to send ICE agents after" the suspect's parents, the threat—even if arguably justified—rendered suspect's statement involuntary). *Cf. Rogers v. Richmond*, 365 U.S. 534, 536 (1961) (reversing for application of correct standard when defendant testified that—after police threatened to bring in his wife if he did not confess—defendant confessed to spare wife from being transported to the scene of the interrogation). The Court should find that Mr. Matish's admissions in the face of threats made against his family members were involuntary.

3. ***Mr. Matish's inexperience with the police, the length and location of his interrogation, and the FBI's exploitation of Mr. Matish's mental health issues contributed to circumstances that—in their totality—rendered Mr. Matish's statements involuntary.***

A number of other factors also conspired to overcome Mr. Matish's will on August 14, 2015. First, Mr. Matish had virtually no previous experience with law enforcement. And a defendant's "experience with the police" is a relevant factor in deciding whether his statement was involuntary. *Haynes v. State of Wash.*, 373 U.S. 503, 525 (1963). Mr. Matish was not a

6

seasoned criminal who "knew the drill"—harsh or threatening interrogation techniques were likely to overcome quickly his free will.

Second, Mr. Matish was only 23 at the time of the interrogation. Like lack of experience with police, a defendant's "youth" is relevant to the voluntariness calculus because it affects his "powers of resistance to overbearing police tactics." *Reck v. Pate*, 367 U.S. 433, 442 (1961). In addition to his chronological age, Mr. Matish was also emotionally immature. *See Holland v. Rivard*, 9 F. Supp. 3d 773, 787 (E.D. Mich. 2014) *aff'd,* 800 F.3d 224 (6th Cir. 2015) (noting that voluntariness test should include consideration of "the suspect's maturity and education"). He was a recent high school graduate who lived at home with his parents and, in many ways, was more of a child than an adult.

Third, the "length, location, and continuity of the interrogation" as well as "the suspect's physical condition and mental health" are all relevant factors. *Holland*, 9 F. Supp. 3d at 787. These factors all weigh against the voluntariness of Mr. Matish's statements. He was subjected to a lengthy hours-long interrogation in a locked FBI interrogation room and was questioned basically non-stop during that time. Moreover, Mr. Matish explained to the agents that he had been suffering severe mental health problems; he explained that he had been a victim of abuse, was suffering memory loss, and had attempted suicide on several occasions. Rather than taking note of Mr. Matish's weakened state and backing off, the agents pressed forward with threats that were capable of overcoming Mr. Matish's rather weak ability to resist.

\* \* \*

Under the totality of circumstances, it is clear that Mr. Matish's will was overborne and his capacity for self-determination critically impaired by the FBI agent's interrogation on August 14, 2015. For that reason, Mr. Matish's statements should be suppressed.

7

Respectfully submitted,

EDWARD JOSEPH MATISH, III

By:_____/s/_____

Andrew W. Grindrod
VSB # 83943
Assistant Federal Public Defender
Attorney for Edward Joseph Matish, III
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org

**CERTIFICATE OF SERVICE**

      I certify that on the 17th day of March, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

                      Kaitlin Courtney Gratton
                      United States Attorney's Office (Newport News)
                      721 Lakefront Commons
                      Suite 300
                      Newport News, VA 23606
                      (757) 591-4000
                      Email: Kaitlin.Gratton@usdoj.gov

                      By:_____/s/_____

                      Andrew W. Grindrod
                      VSB # 83943
                      Assistant Federal Public Defender
                      Attorney for Edward Joseph Matish, III
                      Office of the Federal Public Defender
                      150 Boush Street, Suite 403
                      Norfolk, Virginia 23510
                      (757) 457-0800
                      (757) 457-0880 (telefax)
                      andrew_grindrod@fd.org