IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 4:16cr16 |
| | ) | |
| EDWARD JOSEPH MATISH, III | ) | |

**DEFENDANT'S THIRD MOTION TO SUPPRESS**

Edward Matish, through counsel and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(c), respectfully moves this Court for an order suppressing all evidence seized from Mr. Matish's computer by the FBI on or about February 27, 2015 through the use of a network investigative technique ("NIT"), as well as all fruits of that search. The NIT Warrant that purported to authorize this search was void *ab initio* and therefore the warrantless search was unconstitutional. Mr. Matish also alleges a prejudicial and deliberate violation of Rule 41, which independently warrants suppression. An evidentiary hearing is requested.

**<u>INTRODUCTION</u>**

As the Court is aware from Defendant's First Motion to Suppress (ECF No. 18), all of the government's evidence in this case can be traced back to its remote search of Mr. Matish's home computer through the use of NIT malware. This search was purportedly authorized by the February 20, 2015 "NIT Warrant" issued by Magistrate Judge Theresa Carroll Buchanan of the Eastern District of Virginia. *See* Ex. A[1] (ECF No. 18-1). Because neither the Federal Magistrates Act nor Rule 41(b) authorized the magistrate judge to it, the NIT Warrant—issued without lawful authority—was void *ab initio*. A warrant void from its inception is no warrant at

---

[1] Throughout this Motion, the defense cites to Exhibits attached to Defendant's First Motion to Suppress since the factual background for both are the same. (*See* ECF No. 18).

1

all. The government's search here was thus warrantless and violated the Fourth Amendment. Alternatively, the Court could avoid reaching the constitutional question and grant suppression after finding a deliberate violation of Rule 41(b) that prejudiced Mr. Matish. In either case, suppression is warranted.

## STATEMENT OF FACTS

Mr. Matish incorporates here the statement of facts from his First Motion to Suppress. (ECF No. 18, 3-11.) To summarize, however, the basic facts are as follows:

In February 2015, the government physically seized a server from which an individual in Florida had been operating a website on the "Tor" network. This website is referred to in various government documents as "Website A" or the "Target Website" but it is commonly known as "Playpen." The FBI moved the Playpen server to a location in the Eastern District of Virginia and continued to operate the Playpen website for about a month.

Right after seizing the server, the government applied for a search warrant that would authorize it to install NIT malware on the computer of anyone who clicked through Playpen's homepage. Because the site was operated on the Tor network, the government could not identify the physical location of accessing computers without searching each computer first through the use of its NIT malware.

The government submitted a warrant application to a federal magistrate judge in the Eastern District of Virginia. (As discussed in the Defendant's First Motion to Suppress, the defense maintains that the warrant application contained many inaccuracies and did not make a probable cause showing sufficient to support the broad searching authority that it sought—but those questions are not at issue here.) The magistrate signed the warrant, which identified all

"activating computers" as the places to be searched. Ex. A, 2. The warrant clarified that "activating computers" are the computers "of any user or administrator who logs into the TARGET WEBSITE by entering a username and password." Ex. A, 2.

It is undisputed that the FBI did not know and could not have known the physical location of any "activating computer" before it searched that computer through the deployment of its NIT malware.

On or about February 27, 2015, FBI agents sent the NIT malware to a user's computer and seized data from it. The FBI used data they seized from this computer to determine its physical address: Mr. Matish's home in Newport News, Virginia. On July 23, 2015, the government obtained a traditional residential search warrant—based on the information it obtained through the NIT search—which authorized the search of Mr. Matish's home. Pursuant to that warrant agents seized several computers, hard drives, cellular phones, tablets, video game systems, and other personal property. In sum, all of the government's evidence traces directly back to the malware search it conducted pursuant to the NIT Warrant issued by Magistrate Judge Buchanan.

**LAW & ARGUMENT**

In the last two weeks, two federal judges have found that the NIT Warrant—which purported to authorize the FBI's search of Mr. Matish's computer and countless others across the country[2]—was void *ab initio* because the magistrate judge lacked any legal authority to issue it. United States District Judge William G. Young summarized:

---

[2] *See* Joseph Cox, *The FBI's 'Unprecedented' Hacking Campaign Targeted Over a Thousand Computers*, Motherboard (Jan. 5, 2015), available at http://motherboard.vice.com/read/the-fbis-unprecedented-hacking-campaign-targeted-over-a-thousand-computers (last visited Apr. 29, 2016).

3

> [T]he Court concludes that the NIT Warrant was issued without jurisdiction and thus was void *ab initio*. It follows that the resulting search was conducted as though there were no warrant at all. Since warrantless searches are presumptively unreasonable, and the good-faith exception is inapplicable, the evidence must be excluded.

*United States v. Levin*, Crim. No. 15-10271, 2016 WL 1589824, at *15 (D. Mass. Apr. 20, 2016); *see also United States v. Arterbury*, Crim. No. 15-182, ECF No. 42 (D. Okla. Apr. 25, 2016) ("The NIT Warrant clearly did not comport with Fed. R. Crim. P. 41(b), and, therefore, was invalid *ab initio*.") (Report and Recommendation). As the *Levin* court concluded, "neither the Federal Magistrates Act nor Rule 41(b) authorized the issuance of the NIT Warrant." *Levin*, at *7. "[A] warrant issued in defiance of positive law's jurisdictional limitations on a magistrate judge's powers" is "no warrant at all." *United States v. Krueger*, 809 F.3d 1109, 1126 (10th Cir. 2015) (Gorsuch, J., concurring). Accordingly, all fruit of the government's warrantless search in this case must be suppressed.

### A. Under the Federal Magistrates Act, a Magistrate Judge Lacked Jurisdiction to Issue the NIT Warrant.

"Section 636(a) of the Federal Magistrates Act establishes 'jurisdictional limitations on the power of magistrate judges.'" *Levin*, at *3 (quoting *Krueger*, 809 F.3d at 1122 (Gorsuch, J., concurring)). *Cf. United States v. Bryson*, 981 F.2d 720, 726 (4th Cir. 1992) (vacating magistrate judge's order because magistrate exceeded jurisdictional limitations imposed by Federal Magistrates Act). The Federal Magistrates Act limits the authority of a magistrate judge so that he or she may exercise the powers and duties conferred by the Federal Rules of Criminal Procedure only "within the district in which sessions are held by the court that appointed the

magistrate judge," "at other places" where her court may function, or "elsewhere" as authorized by some other law. 28 U.S.C. § 636(a). Here, without having to look beyond the first paragraph of § 636, it is clear that the magistrate purported to exercise power conveyed by the Federal Rules—*i.e.,* the power to issue a search warrant—but she exercised that power over places that met none of § 636(a)'s self-contained geographic criteria. *See Krueger*, 809 F.3d at 1119 (Gorsuch, J., concurring). This is enough to brand the warrant unauthorized.

But in any event, the *Levin* court correctly held that "[f]or the magistrate judge to have had jurisdiction to issue the warrant under Section 636(a), she must have had authority to do so under Rule 41(b)." *Levin*, at *8 n.11. This is because no other jurisdictional grant in subsections (2) through (5) of § 636(a) is applicable. And no other law or Rule of Criminal Procedure provides a magistrate—through § 636(a)(1)—the jurisdiction to authorize nationwide searches. As discussed below, the territorially unrestricted NIT Warrant was not authorized by Federal Rule of Criminal Procedure 41(b).

But critical to the analysis here is the following: Because § 636(a) explicitly limits the ***jurisdiction*** of magistrate judges by reference to the Federal Rules of Criminal Procedure, a finding that the magistrate judge acted beyond her authority under Rule 41(b) means that she acted ***beyond her jurisdiction*** under § 636(a). As discussed in more detail below, the issuance of a warrant without statutory authority means that the NIT Warrant was ***void at the time it was issued***. The constitutional implications of this conclusion are self-evident.

### B. The NIT Warrant Was Not Authorized by Rule 41.

The NIT Warrant ignored the clearly established jurisdictional limits set forth in Federal Rule of Criminal Procedure 41. It allowed FBI agents to conduct a borderless dragnet search

5

with *no geographic limitation*. Rule 41 simply does not permit a magistrate judge to authorize the searches of computers around the country or around the world.

Rule 41(b) provides a magistrate judge with authority to issue a warrant in five unambiguous circumstances:

> **(b) Authority to Issue a Warrant.** At the request of a federal law enforcement officer or an attorney for the government:
>
> **(1)** a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- *has authority to issue a warrant to search for and seize a person or property located within the district*;
>
> **(2)** a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;
>
> **(3)** a magistrate judge--in an investigation of domestic terrorism or international terrorism--with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;
>
> **(4)** a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and
>
> **(5)** a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:
>
>> **(A)** a United States territory, possession, or commonwealth;

> **(B)** the premises—no matter who owns them—of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or
>
> **(C)** a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

Fed. R. Crim. P. 41 (emphasis added). The warrant in this case was not authorized under any of these sections and is therefore plainly unlawful.

1. The NIT Warrant is Not Authorized Under Rule 41(b)(1).

Rule 41(b)(1) allows a magistrate judge to issue a warrant for people or property located within that judge's district. Under the NIT Warrant the "place to be searched" was the myriad of "activating computers — ***wherever located***" that would unknowingly download the NIT, thereby forcing the transmission of their internal data back to the FBI. Ex. B, ¶ 46 (emphasis added); see also Ex. A (noting that the NIT would be deployed to obtain information from "activating computers" and defining "activating computers" as "those of any user or administrator who logs into the TARGET WEBSITE by entering a username and password"). The NIT Warrant authorized these searches even though there was no basis from which to conclude that these computers would be located in the Eastern District of Virginia. In fact, there was no way the FBI could tell—until *after* they conducted their search—in which judicial district the property they just searched was located. *See* Ex. B, ¶ 34 (explaining that purpose of searching user's computer was to "assist in identifying the user's computer, [and] its location").

Indeed, pursuant to the NIT Warrant the government searched computers located in Washington, Massachusetts, Ohio, Oklahoma, and the list goes on. It appears that the FBI searched computers in at least 18 different judicial districts. *See* Gabrielle Banks, *Federal agents*

*sweep child pornography sit by hacking 'dark web' site*, Houston Chron. (Apr. 10, 2016) (reporting that warrant at issue here has "led to the arrest of more than 135 people in 18 states on child pornography charges"). Rule 41(b)(1) cannot be the basis for dragnet searches with *no territorial restriction*.

Lest there be any doubt about whether it was the "activating computers" that were searched, the Government explained the need for the NIT on the basis that possession of the Playpen server alone would not allow the Government to identify the site's users. Ex. B, ¶ 29 ("While possession of the server data will provide important evidence concerning the criminal activity that has occurred on the server and the TARGET WEBSITE, the identities of the administrators and users of the TARGET WEBSITE would remain unknown without use of additional investigative techniques."). To do so, it was necessary to deploy the NIT so that users' computers would download the NIT and allow the Government to seize this information. Thus, although the NIT was deployed from the server in Virginia, it is clear that the actual searches occurred when the NIT was installed on a user's computer and extracted its data. To say that the Playpen server was the place searched here would be like saying that a search took place in FBI headquarters because agents traveled to a defendant's home, copied data from his computer, and returned to headquarters before examining the contents. That the Government is now capable of seizing data on a computer without physically traveling to its location does not alter the analysis.

As the *Levin* court held, "That the Website A server is located in the Eastern District of Virginia is, for purposes of Rule 41(b)(1), immaterial, since it is not the server itself from which the relevant information was sought." *Levin*, at *5. The critical fact is that "at least some of the

activating computers [searched by the use of NIT malware] were located outside of the Eastern District of Virginia." *Id.*

### 2. No Other Subsection of Rule 41(b) Authorized the NIT Warrant.

The other subsections of Rule 41(b) are inapplicable to this case. Rule 41(b)(2) allows an extraterritorial search or seizure of moveable property if it is located within the district when the warrant is issued but might move or be moved before the warrant is executed. Here there was no evidence in the warrant application that all activating computers were located in the Eastern District of Virginia at the time the warrant issued. Indeed, they were not. The government did not and by its own admission could not say where the activating computers were or where they had been.

It is important to recognize that Rule 41(b)(2) "does not authorize a warrant in the converse situation—that is, for property *outside* the district when the warrant is issued, but brought back *inside* the district before the warrant is executed." *In re Warrant to Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753, 757 (S.D. Tex. 2013). Thus, it is inapposite that the government planned to collect the data that it seized from activating computers around the world and ultimately store that data in the Eastern District of Virginia. If this were the standard, a) the text of Rule 41 would say so, and b) "there would effectively be no territorial limit for warrants involving personal property, because such property is moveable and can always be transported to the issuing district, regardless of where it might initially be found." *Id.*

Likewise, Rule 41(b)(3) cannot serve as a basis because this case does not involve terrorism. Rule 41(b)(4) allows for tracking devices to be installed within the issuing district on an object that may travel to outside the district. The NIT here was installed activating computers

without any assurance that these computers were (or ever had been) physically located within the Eastern District of Virginia for any "tracking device" to be installed. Rule 41(b)(5) does not apply to the NIT Warrant because there was no showing that all activating computers (or any for that matter) were located within any of the locations covered by this subsection.

No portion of Rule 41(b) authorized the nationwide searches contemplated by the NIT Warrant.

### C. Suppression is Warranted.

"There are two categories of Rule 41 violations: those involving constitutional violations, and all others." *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000). Here, issuance of the NIT Warrant exceeded the territorial limitations of Rule 41(b), meaning it was issued without legal authority under § 636(a), which violates the Fourth Amendment.

But even if the Court finds that the Rule 41 violation does not rise to a constitutional level, the Rule 41 violation is substantive—not merely technical—and Mr. Matish was prejudiced by the violation. Moreover, the government intentionally violated Rule 41 by requesting a warrant that was clearly outside the magistrate's legal authority. For these reasons, suppression is warranted.

> 1. <u>Because the NIT Warrant Was Issued Without Legal Authority, It Was Void From Its Inception and the Resulting Warrantless Search Requires Suppression under the Fourth Amendment.</u>

Through § 636(a) and Rule 41(b), federal law designates those individuals who qualify as 'neutral and detached magistrates' and defines their jurisdictional authority to issue warrants under the Fourth Amendment. *See United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010). Unlike more procedural aspects of the Rules, "Section 636(a)'s territorial restrictions are

*jurisdictional* limitations on the power of magistrate judges and the Supreme Court has long taught that the violation of a statutory jurisdictional limitation—quite unlike the violation of a more prosaic rule or statute—is *per se* harmful." *Krueger*, 809 F.3d at 1122 (Gorsuch, J., concurring) (citing *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317 n.3 (1988)). And as discussed above, the NIT Warrant exceeded the relevant jurisdictional limitations. Thus, the issuing magistrate judge lacked legal authority to issue the NIT Warrant in the first place.

The question then turns to what significance that has under the Fourth Amendment. In short: a lot.

> [L]ooking to the common law at the time of the framing it becomes quickly obvious that a warrant issued for a search or seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all—as *ultra vires* and *void ab initio* to use some of the law's favorite Latin phrases…. So, for example, a justice of the king's bench with nationwide territorial jurisdiction afforded by Parliament could issue a warrant anywhere in the kingdom. Meanwhile, warrants issued by justices of the peace—county officials empowered to act only within their respective counties—were executable only within those same limited bounds. *See, e.g.,* 4 William Blackstone, Commentaries *291–92; 2 Matthew Hale, Historia Placitorum Coronae 111 (1736); *Engleman v. Deputy Murray,* 546 F.3d 944, 948–49 (8th Cir. 2008).… The principle animating the common law at the time of the Fourth Amendment's framing was clear: a warrant may travel only so far as the power of its issuing official.

*Krueger*, 809 F.3d at 1123-24 (Gorsuch, J., concurring) (footnotes omitted). More recent cases follow this historical tradition. For example, in a recent series of cases, the Sixth Circuit has explained that the positive law—in these cases, state law—that defines the authority of the warrant issuer is constitutionally significant under the Fourth Amendment.

In *United States v. Master*, the defendant sought to suppress evidence obtained through a state search warrant. 614 F.3d 236, 239 (6th Cir. 2010). It was uncontested that the authorizing judge "did not have jurisdiction under Tennessee law to authorize a warrant for property in a

different county," yet that is what the warrant purported to authorize. *Id.* Thus the Sixth Circuit had to decide whether the lack of authority under state statutory law caused a violation of the federal constitution. The court held that it did. *Id.*

The government in *Master* argued that additional protections a state provides its citizens against search and seizure are irrelevant in federal prosecutions. But the Sixth Circuit noted that the warrant was not invalid because of additional protections provided by the state. "Instead, the warrant is invalid because it does not comply with the Fourth Amendment." *Id.* The court held that "[t]he jurisdictional limits placed on [the state judge] are not additional protections for a citizen but instead merely a reflection of the authority vested by the state in a general sessions judge." *Id.* The *Master* court then cited its decision in *United States v. Scott,* 260 F.3d 512, 515 (6th Cir. 2001), where the court held, "when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio.*" *Id.* (quotation from *Scott*).

The Sixth Circuit held that the Fourth Amendment's warrant requirement incorporates the positive law's rules about who is authorized to issue warrants and under what circumstances. *Master*, 614 F.3d at 240-41. In *Master*, Tennessee law provided that a magistrate's jurisdiction was limited to issuing search warrants for property located within his county. Thus, the Sixth Circuit held, the state court judge "simply did not have the authority to issue a warrant to search a property in Coffee County." *Id.* Critically, because the magistrate acted outside the jurisdiction set by the positive law of the relevant sovereign, this lack of state statutory authority created a problem under the Fourth Amendment of the Constitution of the United States. *Id.*

The Fourth Amendment demands a "valid warrant," and for warrants to be valid they must emanate from "magistrates empowered to issue" them. *United States v. Lefkowitz,* 285 U.S. 452, 464 (1932). "Time and again state and circuit courts have explained that this means a warrant issued in defiance of positive law's restrictions on the territorial reach of the issuing authority will not qualify as a warrant for Fourth Amendment purposes." *Krueger*, 809 F.3d at 1124 (Gorsuch, J., concurring) (citing *State v. Kirkland*, 442 S.E.2d 491, 491-92 (Ga. App. 1994); *State v. Jacob*, 924 N.E.2d 410, 415-16 (Ohio App. 2009); *Sanchez v. State*, 365 S.W.3d 681, 684–86 (Tex. Crim. App. 2012); *Weinberg v. United States*, 126 F.2d 1004, 1006-07 (2d Cir. 1942); *see also United States v. Baker*, 894 F.2d 1144 (10th Cir.1990) (per curiam); *United States v. Barber*, Crim. No. 15-40043, 2016 WL 1660534, at *3 (D. Kan. Apr. 27, 2016) (noting that "[c]ourts have found that warrants issued without jurisdiction are void from their inception" and collecting cases).

To be sure, Rule 41 contains "both procedural and substantive provisions." *Levin*, at *7. And violations of Rule 41's "ministerial or technical" procedural requirements have generally been deemed not to warrant suppression. *Id.* But "this case involves a violation of Rule 41(b), which is a substantive provision.'" *Id.* (quoting *United States v. Berkos*, 543 F.3d 392, 398 (7th Cir. 2008)); *see also Krueger*, 809 F.3d at 1115 n.7 (noting that Rule 41(b)(1) "is unique from other provisions of Rule 41 because it implicates 'substantive judicial authority,'" and concluding that cases involving violations of other subsections of Rule 41 "offer limited guidance").[3] What is more, the lack of compliance with Rule 41(b)'s substantive territorial restrictions means,

---

[3] In *United States v. Glover*, the D.C. Circuit was presented with a warrant that violated the territorial provisions of Rule 41(b) and the relevant statute. 736 F.3d 509, 515 (D.C. Cir.

13

the NIT Warrant was issued without jurisdiction and thus was void *ab initio*. It follows that the resulting search was conducted as though there were no warrant at all. Since warrantless searches are presumptively unreasonable…the evidence must be excluded.

*Levin*, at *15.

### 2. Independent of the Constitutional Violation, Suppression Is Warranted By Intentional or Prejudicial Violations of Rule 41.

A non-constitutional violation of Rule 41 still warrants suppression when either 1) the defendant "suffered prejudice," or 2) "the government intentionally violated the rule." *United States v. Hurwitz*, 459 F.3d 463, 473 n.6 (4th Cir. 2006); *Simons*, 206 F.3d at 403.

Prejudice can be established by "a showing that the search would not have taken place the same way" if Rule 41 had been followed. *United States v. Graham*, 796 F.3d 332, 373 (4th Cir.), *reh'g en banc granted,* 624 F. App'x 75 (4th Cir. 2015). "Here, had Rule 41(b) been followed, ***the magistrate judge would not have issued the NIT Warrant***, and therefore the search conducted pursuant to that Warrant might not have occurred." *Levin*, at *9 (emphasis added).

Because the Rule 41 deficiency relates to the very issuance of the warrant, it makes no difference that Mr. Matish's computer happened to be located within the Eastern District of Virginia when the government hacked it. The NIT Warrant was void *ab initio*. Had the magistrate judge not acted beyond her statutory authority, the NIT Warrant would never have been issued.

---

2013). The court rejected the government's argument that this did not amount to a "jurisdictional flaw in the warrant": "[W]e do not see how a blatant disregard of a district judge's jurisdictional limitation can be regarded as only 'technical.'" *Id.* The *Glover* court reversed for the district court's failure to suppress.

The counter-factual is demonstrated by magistrate judge's opinion denying a government application for a warrant to employ NIT malware in a different investigation. In *In re Warrant to Search a Target Computer at Premises Unknown*, the government sought authority to conduct a search—or in the words of the court "to hack a computer"—by "surreptitiously installing software designed … to extract certain stored electronic records." 958 F. Supp. 2d 753, 755 (S.D. Tex. 2013) (hereinafter "*In re Warrant*"). As in this case, the government sought to install its malware on "an unknown computer **at an unknown location**." *Id.* (emphasis added). Like the government did here in the NIT Warrant application, Ex. B, the government admitted in *In re Warrant* that "the current location of the Target Computer is unknown." *Id.* at 756. On that basis, the magistrate deemed that the government was asking him to issue a search warrant that exceeded "the territorial limits on a magistrate judge's authority to issue a warrant." *Id.*

The magistrate judge here should have done the same. And if she had, the NIT Warrant would not have issued at all. There was no way for the government to narrow the territorial scope of the NIT Warrant. When deploying the NIT, the government could not limit its searches to computers located within the Eastern District of Virginia. The FBI did not know the physical location of any computer it was searching until after the search was completed. Mr. Matish was subject to the nationwide dragnet searches authorized by the NIT Warrant as much as someone in Massachusetts or Alaska. And the *ex post* determination that his computer happened to have been located in the Eastern District of Virginia cannot cure the *ex ante* jurisdictional flaw that infected the NIT Warrant at its inception. The NIT Warrant could not have issued without violating Rule 41(b), so the prejudice to Mr. Matish is clear.

Moreover, the Rule 41 violation was deliberate. Rule 41(b)'s territorial limitations are clear and unambiguous. For that reason alone, courts have been skeptical of 'good faith'

explanations for the government seeking warrants for searches that clearly violate Rule 41's limitations.  *See, e.g., Glover*, 736 F.3d at 516 ("In any event, it is quite a stretch to label the government's actions in seeking a warrant so clearly in violation of Rule 41 as motivated by 'good faith.'")

But here the government knew that search warrant applications seeking to deploy NIT malware against unknown computers in unknown locations had been denied citing Rule 41(b) concerns.  *See In re Warrant*, 958 F. Supp. 2d at 757 (denying application for NIT warrant in 2013).  The Department of Justice recognized the Rule 41 problem with NIT searches and ***DOJ was actively lobbying the Rules Committee to change Rule 41*** to allow such "remote searches." In a September 18, 2013 letter to the Rules Committee proposing an amendment to Rule 41, ***the Department of Justice cited*** **In re Warrant**, noting that a "magistrate judge recently ruled that an application for a warrant for a remote search did not satisfy the territorial jurisdiction requirements of Rule 41."[4]  Then—just months before applying for the NIT Warrant in this case, a DOJ memorandum offered examples of "remote search warrants" that could be issued under an expanded version of Rule 41(b): DOJ described a child pornography website located on the Tor network and suggested that expanding Rule 41 would allow the government to "identify the location of the individuals accessing the site…by sending a NIT to each computer used to log on to the website."[5]

---

[4] Letter from Mythili Raman, Acting Asst. Attorney Gen. to Hon. Reena Raggi, Chair, Advisory Committee on Crim. R., 2 (Sept. 18, 2013) (asking Committee "to update the provisions [of Rule 41] relating to the territorial limits for searches" to allow searches via "remote access"), *available at* https://www.justsecurity.org/wp-content/uploads/2014/09/Raman-letter-to-committee-.pdf (last visited Apr. 29, 2016).

[5] Memo from David Bitkower, Deputy Asst. Attorney Gen. to Hon. Reena Raggi, Chair,

Through a series of letters and memoranda dating back to at least September 2013—over a year before the NIT Warrant was issued under the still-unchanged version of Rule 41(b)—the government demonstrated its understanding that Rule 41 does not presently authorize the kind of warrant the government sought here. The government appears to have decided to obtain a warrant that it knew was unauthorized under Rule 41(b) and then fight out the suppression issue in the courts. It is exactly this sort of deliberate violation that the suppression remedy was designed to incentivize against.

## **CONCLUSION**

The NIT Warrant was issued without jurisdiction and thus was void *ab initio*. Accordingly, the resulting search was authorized by no warrant. Since warrantless searches are presumptively unreasonable, the evidence must be excluded.

Alternatively, the Court can avoid reaching the constitutional question and find either that Mr. Matish was prejudiced by the clear violation of Rule 41 or that the government deliberately violated that rule when it applied for the NIT Warrant. In either case, suppression is likewise warranted.

    Respectfully submitted,

    EDWARD JOSEPH MATISH, III

    By:_____/s/_____

    Andrew W. Grindrod
    VSB # 83943
    Assistant Federal Public Defender
    Attorney for Edward Joseph Matish, III
    Office of the Federal Public Defender

---

Advisory Committee on Crim. R., 6-7 (Dec. 22, 2014), *available at* https://www.regulations.gov/#!documentDetail;D=USC-RULES-CR-2014-0004-0040 (last visited Apr. 29, 2016).

        150 Boush Street, Suite 403  
        Norfolk, Virginia 23510  
        (757) 457-0800  
        (757) 457-0880 (telefax)  
        andrew_grindrod@fd.org

**CERTIFICATE OF SERVICE**

       I certify that on the 2nd day of May, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

                Kaitlin Courtney Gratton
                United States Attorney's Office (Newport News)
                721 Lakefront Commons
                Suite 300
                Newport News, VA 23606
                (757) 591-4000
                Email: Kaitlin.Gratton@usdoj.gov

                By:_____/s/_____

                Andrew W. Grindrod
                VSB # 83943
                Assistant Federal Public Defender
                Attorney for Edward Joseph Matish, III
                Office of the Federal Public Defender
                150 Boush Street, Suite 403
                Norfolk, Virginia 23510
                (757) 457-0800
                (757) 457-0880 (telefax)
                andrew_grindrod@fd.org