IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 4:16cr16 |
| | ) | |
| EDWARD JOSEPH MATISH III, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney for the Eastern District of Virginia, and Kaitlin C. Gratton, Assistant United States Attorney, hereby offers this Position with Respect to Sentencing. In accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and its addenda and does not dispute any of the sentencing factors or facts set out therein.

For the reasons to follow, as well as those to be more fully articulated at the sentencing hearing on January 30, 2017, the United States respectfully requests that the Court sentence the defendant at the low-end of the advisory guideline range on Count One to a term not greater than 60 months. Such a sentence properly reflects the factors referenced in 18 U.S.C. § 3553(a).

### BACKGROUND

As detailed in the PSR and revealed in the Statement of Facts, in August 2014, a hidden site began operating on an anonymous network accessible through the Internet. That site, known as Playpen, operated until in or about March 2015. During that period, it grew to be the largest known child pornography hidden service operating on the anonymous network worldwide. Its contents were highly categorized in sections, forums, and sub-forums based on the gender and age

of the children and the type and degree of the sexual activity in which those children were engaged. Within these sections, forums, and subforms, users authored topics in which they included previews of and links to download images and videos containing child pornography. Although a limited number of topics contained information about how to use the site, the vast majority of the site's content comprised categorized repositories for sexually explicit images of children. To access this content, a user had to download a separate browser and then learn of the hidden site and its exact location. After that, a user had to create a membership account by providing what appeared to be a legitimate email address; however, the registration instructions strongly cautioned against providing any identifying information. Those instructions also included other recommendations on how to conceal one's true identity while accessing the site.

In early 2015, the FBI determined the location at which Playpen was hosted. FBI agents then sought and obtained court authorizations to monitor the communications of Playpen's members and to deploy a network investigative technique (NIT) on the site to identify registered members through their actual IP addresses and other information associated with the computers they used to access Playpen. After receiving such authorization, the FBI augmented Playpen's content with the NIT, which users affirmatively downloaded when they requested and received content from the site.

The defendant created a Playpen membership account using the name "Broden" on October 21, 2014. Between October 21, 2014 and March 2, 2015, the defendant spent nearly 7 hours logged in to Playpen through that account. Website logs recorded during the FBI's operation revealed that—over a ten-day period beginning on February 20, 2015 and ending March 2, 2015—the defendant viewed 32 conversation threads that included at least 352 links and preview images of child pornography. PSR ¶ 10. Over those ten days, the defendant viewed these same threads 52

times and affirmatively downloaded 29 of the preview images contained therein by clicking on the links that accompanied the previews. *Id.* Information related to the defendant's activities prior to February 20, 2015 was not recovered through the investigation.

In addition to accessing, viewing, and downloading Playpen content, on December 29, 2014, the defendant responded to a topic in Playpen's "Nonfiction" forum. In the posting, the defendant told another user, "if you cant control yourself, you should quit," then describing in detail his attraction to "girls way too young to consider being with" and his use of Playpen to "control [him]self and stop [him]self from doing something [he] know[s] [he]'ll regret." The defendant concluded the posting by advising the other user to "[l]eave the touching to the brave souls willing to risk everything for our relief."

A July 2015 search of the defendant's home recovered several electronic devices, including a Dell desktop with the same registered name as that identified by the NIT—"Eddie." A forensic examination of this computer recovered 32 images of child pornography. PSR ¶ 11. These images include depictions of oral sex between children and an adult male and at least two images infants engaged in sexual activity. All of the images had been deleted, were no longer accessible to any user of the computer, and did not contain information related to the date or manner in which they had been placed on the computer. *Id.* The defendant still had the Tor browser on his computer when it was recovered.

At the time of the search, the defendant agreed to speak with agents. When advised of the nature of the FBI's investigation, the defendant acknowledged having downloaded the Tor browser, but denied using the browser to access child pornography. He claimed not to recall the December 29, 2014 posting and denied ever creating an account on a Tor site or using the name "Broden." The defendant ultimately acknowledge that he started looking at "stuff" on the Internet

in September 2014. Although he identified Playpen as one of the sites he had visited, he denied every logging in to the site. The defendant agreed to take a polygraph to confirm that he had never had inappropriate sexual contact with a child.

On August 14, 2015, the defendant voluntarily submitted to a polygraph examination. At the conclusion of that exam, he agreed that he must have created an account on Playpen, if the FBI's computer evidence showed that he had. The defendant maintained that he could not recall doing so and typed a statement in which he claimed to have suffered from extreme emotional distress between September and November 2014. The defendant further claimed that he had difficulty remembering that period and had no recollection of creating an account on Playpen. After reviewing the substance of his December 29, 2014 posting, the defendant said he was "beginning to recall it." He added to his written statement that, after having seen the evidence concerning the creation of the Broden account, the December 29, 2014 posting, and a screenshot of the website, he could confirm that he was on the site and that he had authored the posting. The defendant maintained that he could not remember how much time he spent on the site or the images he viewed while on it, as he had repressed the memories of Playpen. The defendant signed a copy of the text from the December 29, 2014, confirming that it represented content that he had posted to Playpen. The defendant also advised the polygraph examiner that he participated in age play/role paly in which he and other adults engage in sexually explicit conversations in which one played the role of a child. PSR ¶ 12.

On February 8, 2016, a federal grand jury sitting in Newport News, Virginia returned a four-count indictment charging the defendant with accessing with intent to view child pornography involving a prepubescent minor, in violation of 18 U.S.C. §§ 2252A(a)(5) and (b)(1). On April 6, 2016, a superseding indictment was returned charging the defendant with four additional counts

of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). On October 18, 2016, the defendant appeared before this Court and pleaded guilty to Count One of the superseding indictment. The Court accepted his plea, found the defendant guilty, and continued the matter for sentencing.

The defendant currently faces an advisory range of **51 to 63 months** on Count One, which carries a statutory penalty of not more than twenty years of imprisonment. The defendant's guideline range derives from a base offense level 18 and a number of enhancements and reductions, specifically: a two-level reduction for offense conduct limited to receipt and not involving distribution of child pornography (U.S.S.G. § 2G2.2(b)(1)); a two-level enhancement for material involving a prepubescent minor (U.S.S.G. § 2G2.2(b)(2)); a four-level enhancement for material portraying sadistic or masochistic conduct or other depictions of violence (U.S.S.G. § 2G2.2(b)(4)); a two-level enhancement for using a computer to access child pornography (U.S.S.G. § 2G2.2(b)(6)); a two-level enhancement for at least 10 images but less than 150 (actual amount 32) (U.S.S.G. § 2G2.2(b)(7)(A)); and a two-level reduction for acceptance of responsibility (U.S.S.G. § 3E1.1)).

## DISCUSSION

The parties do not object to the calculation of the defendant's advisory guideline range. The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). 18 U.S.C. § 3553(a)(1)

provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a sentence at the low end of the advisory guideline range.

In briefly reviewing the Section 3553(a) factors, the nature and circumstances of the offense are very serious and weigh heavily against the defendant. The defendant was using an Internet-connected network designed to conceal his identity to access a hidden site dedicated to the sharing of child pornography. In the span of approximately four months, the defendant spent nearly 7 hours actively logged into and navigating Playpen and its contents. Only ten days of that activity were captured as a part of the FBI's investigation. And yet, in that ten-day period, the defendant accessed 32 threads containing 352 links and preview images of child pornography at least 52 times, affirmatively downloading at least 29 of the images by clicking on the links within those threads. PSR ¶ 10. Many of these images included a dozen or more frames, each depicting the sexual exploitation of a minor. *Id.*

In addition to the defendant's activities in this limited period, he downloaded and possessed 32 images of child pornography, including images of infant children engaged in sexual activity, and participated in sexually explicit age play chats in which he and others pretended to be children engaged in sexual activities with adults. PSR ¶¶ 11-12. Most troubling is the defendant's own statement, posted to Playpen on December 29, 2014, that he uses child pornography to control his

sexual attraction to and urge to touch very young girls. That the defendant sought out and accessed child pornography through an anonymous network that allows users to conceal their true identities and locations in an attempt to control what he, himself, suggests are strong urges underscores the seriousness and the danger posed by his offense. But for the FBI's investigation and, specifically, its use of the law enforcement technique described in the Statement of Facts, the defendant would have escaped detection as he continued to seek out images and videos of young children engaged in sexually explicit conduct in an effort to curb what he, himself, implied were compelling urges to engage in sexual activity with such children.

The defendant has no prior criminal convictions. He was raised by both parents until the age of seven, after which time he resided primarily with his mother and step-father. PSR ¶ 41. The defendant denies suffering significant problems in his family home and his family remains supportive of him. PSR ¶¶ 41, 48-49. The defendant has reported sexual contact with a babysitter between the ages of 8 and 9. *Id.* However, the defendant has given various accounts of that contact during the investigation and prosecution of the instant offense. *Id.* The defendant is a high school graduate in overall general good health with no substance abuse history. PSR ¶¶ 50, 55-56. The defendant has maintained primarily seasonal employment since graduating from high school in 2010. PSR ¶¶ 57-63. The defendant reports a history of suicidal ideations and attempts. PSR ¶ 53. Since his arrest, the defendant has been participating in individual mental health therapy. ¶ 52. The defendant's background sheds little light on his involvement in the instant offense, in particular, his self-described attraction to and interest in very young girls.

The United States submits that the most important factors to be addressed in this case are the need for the sentence to reflect the seriousness of the offense and the need to protect the public from further crimes of the defendant.

"Child pornography is a vile, heinous crime." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012). Courts and Congress alike have recognized that receiving, viewing, and distributing child pornography "inflicts an injury upon the child depicted by violating his or her privacy, contributing to a cycle of abuse, and perpetuating a market for the sharing of materials." *United States v. Hicks*, No. 1:09cr150, 2009 WL 4110260, at *2 (E.D. Va. Nov. 24, 2009) (citing *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2011)). In enacting Section 2252, Congress expressed "a deep and abiding concern for the health and welfare of children." S. Rep. No. 95-438, at 41 (1977). Since then, Congress has also expressly recognized the repeated victimization that results when depictions of a child's sexual exploitation are distributed and viewed by others, noting that a "child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography," a system that is almost limitless in today's interconnected, online society. S. Rep. 104-358, at 4 (1996) (quoting *New York v. Ferber*, 458 U.S. 747, 760 (1982)). This harm is borne out by victim impact statements and testimony in cases prosecuted under Section 2252. *See, e.g.*, *Hicks*, 2009 WL 4110260, at *3 (quoting a victim depicted in a known series of child pornography describing her feelings about the continued distribution and viewing of her images as follows, "This knowledge has given me paranoia. I wonder if the people I know have seen these images. I wonder if the men I pass at the grocery store have seen them. Because the most intimate parts of me are being viewed by thousands of strangers and traded around, I feel out of control … It feels like I am being raped by each and every one of them."). The harm caused by distribution, receipt, and viewing of child pornography is significant and an important factor for consideration at sentencing. *Cf. Cunningham*, 680 F. Supp. 2d at 847 (denying the defendant's challenge to the legitimacy of the

child pornography guideline and cautioning against the "sterilization" of such offenses in the legal system, where "[v]ictims all too often remain nameless" and "[t]he only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement").

The defendant's conduct is serious. He knowingly and deliberately participated in and perpetuated the abuse of the children depicted in the images he accessed through Playpen and downloaded to his computer. And he did so, repeatedly, over several months without apparent concern for how the creation or the widespread distribution of those images might affect such minor victims. Rather, as the defendant made clear in his December 29, 2014 posting, his focus was only on the relief those images provided him, from his sexual attraction to the children with which he interacted. The images the defendant viewed and downloaded to his computer included very young children engaged in various sexual acts, including beastiality. Because of the limited period in which the defendant's online activity was monitored, the information before the Court provides a necessarily limited view of the defendant's conduct. The advisory Guideline range is similarly based on this limited picture. It does not, therefore, overstate the seriousness of the defendant's offenses, which continued over a period of months and likely would have continued absent law enforcement intervention. Although the defendant has no known history of contact offenses with minor children, his conduct is nevertheless serious and deserving of just punishment.

The Court is well familiar with the 2012 Sentencing Commission report to Congress on federal child pornography offenses and the common argument that this report should deter the Court from considering advisory guideline ranges in child pornography cases. *See* U.S. Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (2012), *available at* http://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-

pornography-offenses). The United States strongly opposes such a suggestion. The government does not agree that the advisory guideline range overstates the nature and seriousness of the defendant's conduct or any other sentencing factor set forth in 18 U.S.C. § 3553(a). As a threshold matter, the Sentencing Commission's report was authored in 2012. Since that time, Congress has not adopted any of its proposals. Nor has the Sentencing Commission amended the Guidelines to meaningfully reflect the report's findings. Thus, both Congress and the Sentencing Commission have received and considered the arguments set forth in that report and neither has acted on them.

The government submits that the advisory guideline range, as accurately calculated in this case, accounts for several aggravating and mitigating factors relevant to the Court's consideration of the appropriate sentence. The base offense level is among the lowest assigned to offenses involving the sexual exploitation of minors. *Compare* U.S.S.G. § 2G2.2(a)(1) (assigning a base offense level of 18 to four offenses involving the trafficking and possession of material involving the sexual exploitation of a minor) *with* U.S.S.G. § 2G1.3 (assigning base offense levels ranging from 24-34 for offenses involving commercial and prohibited sex acts involving minors); U.S.S.G. § 2G2.1 (assigning a base offense level of 32 for offenses involving the production of sexually explicit material involving a minor); *and* U.S.S.G. § 2G2.2(b) (assigning a base offense level of 22 for offenses involving the trafficking and possession of material involving the sexual exploitation of a minor other than those set forth in U.S.S.G. § 2G2.2(a)). The advisory Guideline range also includes reductions for various mitigating factors, including the defendant's acceptance of responsibility and the lack of evidence that he distributed images to others. PSR ¶¶ 20, 30. The defendant receives four enhancements for various aggravating factors. Each applies to the defendant's offense conduct and appropriately reflects the seriousness of that conduct.

First, the defendant receives an enhancement for an offense involving a prepubescent minor. PSR ¶ 19. As reflected in the PSR and the Statement of Facts, the defendant prefers prepubescent minors and the majority of the images and videos found on his computer involved such minors, as did the material the defendant accessed on Playpen. The images described in the statement of facts and paragraph 11 of the PSR reveal the young ages of the children depicted in the images the defendant accessed and possessed. That other offenders might also possess images involving young and vulnerable children does not mitigate this defendant's access and possession of dozens of threads and images depicting the sexual exploitation of such children. The age of the victims is an aggravating factor, one appropriately recognized by a two-level enhancement.

The defendant next receives a four-level enhancement applied for offense material portraying sadistic or masochistic conduct or other depictions of violence. PSR ¶ 20. The applicability of this enhancement does not depend on the proportion of images depicting the sadistic, masochistic, or violent sexual exploitation of children. Indeed, there is no threshold number of images a defendant must possess to qualify for the enhancement. *See* U.S.S.G. § 2G2.2(b)(4). And the accompanying commentary makes clear that a defendant should receive the enhancement "if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, regardless of whether the defendant specifically intended to possess, access with intent to view, receive, or distribute such materials." U.S.S.G. § 2G2.2, app. n. 2. Here, the defendant accessed images on Playpen and possessed images that included visual depictions warranting this enhancement—including an image of a prepubescent girl receiving oral sex from a dog and images of infants engaging in sexual contact with adults. The fact that the defendant possessed and accessed dozens of other images does not mitigate the aggravated nature

of the images for which he received this enhancement and the Court should consider that when evaluating the seriousness of the defendant's conduct.

The defendant next receives two-level enhancement for using a computer or interactive computer service to possess or access with intent to view child pornography. PSR ¶ 23. The defendant's use of the computer to access Playpen in the way that he did certainly distinguishes this case from others in which this enhancement has applied and, therefore, supports the Court's consideration of the two-level enhancement. The defendant downloaded an anonymizing network and used it to access a hidden site not readily available to a typical Internet user. After downloading the network, the defendant had to locate the exact address—a randomized series of letters and numbers—before he could access Playpen. The defendant then created and maintained an account on Playpen for a period of several months, spending nearly 7 hours in total actively logged in to that account. Relatedly, the government submits that the defendant's deliberate decision to affiliate with a membership-based child pornography site, itself, is an aggravating factor, as participation in an Internet community dedicated to the sexual exploitation of children validates, normalizes, and encourages further sexual abuse of minors. As the Court well knows from the extensive litigation of the NIT, without that technique the location and identities of Playpen users, including the defendant, would have remained concealed, allowing the community of producers, distributors, and viewers to continue exchanging and consuming child pornography without fear of detection. The defendant not only used a computer, but he did so in a sophisticated way designed to conceal his identity and thereby allow him to carry out his offenses against children undetected. Even if the Court would otherwise be inclined to give less weight to the applicability of an enhancement under U.S.S.G. § 2G2.2(b)(6), the defendant's use of a computer

to conceal his identity throughout the commission of his offenses in this case is an aggravating factor supporting its consideration.

Finally, the defendant receives a two-level enhancement for an offense involving at least 10, but fewer than 150 images. PSR ¶ 24. The PSR attributes the defendant with 32 images based only on the images recovered from his hard drive. The number of images attributed to the defendant does not include any of 352 links and previews of images that the defendant accessed, many of which included a dozen or more images depicting the sexual exploitation of minors. PSR ¶ 10. Nor does it include the number of times the defendant accessed those images—52. *Id.* Similarly, the number does not account for the 29 images the defendant affirmatively downloaded from Playpen or any of his activity on that site prior to the commencement of the FBI's operation on February 20, 2015. *Id.* In reality, the number of images on which the enhancement is based—32—reflects only a small portion of the images the defendant has accessed and downloaded in an attempt to quell and control his sexual desire for children. It is a conservative estimate of the defendant's conduct and its application does not overstate the seriousness of that conduct.

Accordingly, even if an argument could be made that some or all of the enhancements applied in this case might not—in the abstract—meaningfully distinguish among child pornography offenders—an argument with which the government disagrees—those enhancements, as applied in this case, certainly recognize the true nature and seriousness of the defendant's offenses. The advisory guideline range, therefore, does not overstate the seriousness of those offenses or any factor set forth in 18 U.S.C. § 3553(a).

A sentence at the low end of the advisory guideline range will recognize the seriousness of the defendant's offenses and will also accomplish several other purposes of sentencing, including the need for just punishment, deterrence, and to protect the public. For more than 30

years, "Congress has legislated against child pornography." *United States v. Morace*, 593 F.3d 340, 350 (4th Cir. 2010). This legislation provides "ample evidence of Congress's intent that offenses involving child pornography be treated severely." *Id.* (quoting *United States v. Goff*, 501 F.3d 250, 258 n. 13 (3d Cir. 2007). The defendant's conduct in this case and the explanation he gave for that conduct on December 29, 2014 also evidence the need to deter him and to protect the public from future offenses. The defendant told a community dedicated to the sexual exploitation of minors that he needs to consume depictions of that exploitation to satisfy his own attraction to children he encounters. He praised the "brave souls" willing to engage in and document such exploitation for the risks they took for his "relief." The sentence that this Court imposes must deter him from committing further offenses and must also protect the public from any further criminal conduct, including further access and possession of child pornography. It must also promote a respect for the law sufficient to dissuade him from seeking out such materials through means designed to conceal his conduct from law enforcement.

In fashioning an appropriate sentence, the Court is required to avoid unwarranted sentencing disparities between the defendant and similar defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). In another case stemming from the FBI's investigation of Playpen, the Honorable Mark S. Davis imposed a sentence of 42-months imprisonment on a defendant who had similarly pleaded guilty to accessing with intent to view child pornography involving a prepubescent minor. *United States v. Andrew James Montanaro*, 4:16cr15 (July 7, 2016) (ECF No. 33). In that case, the defendant joined Playpen in November 2014. Between then and March 2, 2015, he spent nearly 26 hours logged in to the site. During the same ten-day period in which this defendant's website activity was captured, Montanaro viewed 134 conversation threads that included 637 images and preview images of

child pornography 226 times, affirmatively downloading 29 preview images. Montanaro also possessed 1,292 images and 98 videos in the unallocated space of his computer. Montanaro received the same enhancements as this defendant, with additional levels assessed for his possession of more than 600 images. Unlike this defendant, Montanaro received the third level reduction for acceptance of responsibility, based on his early acceptance of responsibility, which spared the United States the burdens of litigation and trial preparation. Although the two cases stemmed from the same investigation, they are otherwise unrelated. At sentencing, Montanaro expressed remorse and stated that he had failed to appreciate the harm caused by viewing child pornography, namely, creation of a demand for material that thereby encouraged others to abuse children to generate more content. Def.'s Pos. on Sent. At 6-7, *United States v. Montanaro*, 4:16cr15 (Jun. 30, 2016) (ECF No. 29).

The United States submits that a low-end guideline sentence is appropriate in this case and does not create an unwarranted sentencing disparity with the *Montanaro* case. As a threshold matter, "[c]ourts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized…." *United States v. Rivera-Santana*, 668 F.3d 95, 105-06 (4th Cir. 2012) (collecting cases). But, even if a particular defendant's sentence is "more severe than average, that fact does not mean that it was unwarranted." *Id.* Indeed, the facts of this case, when compared to those in *Montanaro*, support a higher sentence than the sentence imposed in that case.

Although Montanaro's known viewing activity exceeded that of this defendant, he did not post any content to Playpen or otherwise attempt to engage with users of the site, as this defendant did. Additionally, Montanaro quickly and completely accepted responsibility for his actions. When interviewed during the October 2015 search of his residence, Montanaro fully

15

confessed to the conduct under investigation. He also told interviewing agents about prior collections of child pornography that he had amassed and deleted. He did not deny or minimize his involvement. He quickly accepted responsibility, pleading guilty well in advance of trial. The District Court considered these facts, the arguments of counsel, and the factors set forth in 18 U.S.C. § 3553(a), including the defendant's lack of criminal history.

In contrast, this defendant posted to Playpen, telling other users that he used the site to control his attraction to very young girls, and advising another user—who had asked for guidance—to "quit" if he could not control himself and "[l]eave the touching to the brave souls willing to risk everything for our relief." The defendant minimized his interactions with Playpen when first approached by law enforcement, only acknowledging his use of the Broden name after a polygraph examination and the presentation of multiple items of evidence connecting him to that account. Even after that admission, the defendant maintained a lack of memory concerning his involvement with the site, despite the fact that his use of Playpen extended well beyond any reported period of emotional distress. And, unlike Montanaro, this defendant fully appreciated the ramifications of his child pornography use, as evidenced by his December 29, 2014 posting in which he described his use of Playpen and his apparent gratitude to the individuals who had produced and were continuing to produce child pornography. Coupled with the posting's clear expression of the defendant's preference for very young children and his difficulty controlling his attraction to such children—both of which suggest a greater need to protect the public from future crimes of this defendant—any disparity between the sentence imposed in this case and that imposed on Montanaro is certainly not unwarranted.

Additionally, any other reasons suggested in favor of an extreme variance from the advisory guideline range would be "fairly common place." *Morace*, 593 F.3d at 350. For

example, the defendant's lack of criminal history. "[T]hat fact is taken into account in the advisory sentencing range calculation, and it simply places him within the 'heartland' of persons convicted for possessing child pornography." *Id.* (citing *United States v. Lychock*, 578 F.3.3d 214, 220 (3d Cir. 2009)). Similarly, efforts at rehabilitation and a defendant's education or employment, although "commendable," are "nothing unusual." *Id.* To justify "the most extreme downward variance possible," a district court must rely on more than such "common" circumstances, particularly in light of Congress's repeated policy judgments evidencing its intent that offenses involving child pornography be punished severely. *Id.* 350-51.

CONCLUSION

A sentence at the low end of the advisory guideline range on Count One, and not greater than 60 months, adequately reflects the severity of the crimes committed by the defendant, will accomplish needed punishment and deterrence, and will protect the public from future crimes of this defendant. For the reasons stated above, the United States respectfully submits that such a sentence would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

    Dana J. Boente
    United States Attorney

By: _____/s/_____
    Kaitlin C. Gratton
    Virginia State Bar No. 83935
    Assistant United States Attorney
    Attorney for the United States
    United States Attorney's Office
    Fountain Plaza Three, Suite 300
    721 Lakefront Commons
    Newport, Virginia 23606
    Phone: (757) 591-4000

Fax: (757)591-0866  
Email: kaitlin.gratton@usdoj.gov

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

Andrew William Grindrod
Office of the Federal Public Defender - Norfolk
150 Boush St
Suite 403
Norfolk, VA 23510
(757) 457-0800
Fax: (757) 457-0880
Email: andrew_grindrod@fd.org

Richard Joseph Colgan
Office of the Federal Public Defender - Norfolk
150 Boush St
Suite 403
Norfolk, VA 23510
(757) 457-0800
Email: richard_colgan@fd.org

I HEREBY CERTIFY that on this 23rd day of January, 2017, I sent a true and correct copy of the foregoing to the following by electronic mail:

Kristie M. Milby
United States Probation Officer
827 Diligence Drive, Suite 210
Newport News, Virginia 23606
Tel. 757-223-4661
Email: Kristie_Milby@vaep.uscourts.gov

_____/s/_____
Kaitlin C. Gratton
Virginia State Bar No. 83935
Assistant United States Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport, VA 23606

Phone: 757-591-4000
Email: kaitlin.gratton@usdoj.gov